IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2005 NOV -7 PM 4:30
CLERK
WESTERN DISTRICT COURT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| *ex rel.* | § | |
|    VEN-A-CARE OF THE | § | |
|    FLORIDA KEYS, INC., | § | Civil Action No. A-05-CA-897-LY |
|    Plaintiffs, | § | |
| v. | § | |
| ABBOTT LABORATORIES INC., et al., | § | |
|    Defendants. | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

As set out in their Motion to Stay, Defendants Abbott Laboratories Inc., Abbott Laboratories and Hospira, Inc. (collectively the "Abbott Defendants") respectfully submit that this Court should stay all proceedings -- including acting on Plaintiffs' Motion to Remand -- until this case is transferred to Judge Saris and MDL 1456.[1]

Should this Court choose to act on Plaintiffs' Motion to Remand, however, it should deny the Motion. After over five years of delay, Plaintiffs chose to add a new claim to this case *just last month*. In a prior opinion, Judge Saris ruled that the *very federal issue* this new claim presents would support federal jurisdiction -- but for one point, on which she was bound by First Circuit law, and which she held required remand. The Supreme Court's recent decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005), however, overturned that First Circuit law -- removing the only hurdle to a conclusion of federal jurisdiction here. Therefore, because Plaintiffs chose to add their new claim, and the Abbott

---

[1] On November 7, 2005, the Judicial Panel on Multidistrict Litigation issued CTO 26, conditionally transferring this action to MDL 1456. A copy of CTO 26 is being filed concurrently with this Court with a Notice of Supplemental Authority in Support of Defendants' Motion to Stay.



Defendants have removed the case to federal court based on this claim, the only proper course for this Court and MDL 1456 now is to honor their "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Plaintiffs' Motion does not even mention this straightforward analysis. Instead, apparently concerned that Judge Saris will deny remand in light of Plaintiffs' new claim and *Grable*, Plaintiffs desperately seek to avoid letting Judge Saris see this case -- advocating, instead, that this Court rush to decide remand, rather than wait to let Judge Saris resolve the federal issue it presents once and for all in connection with the myriad cases being transferred to MDL 1456.[2] Indeed, Plaintiffs' sole attempt to discuss the merits here is to (blatantly) mischaracterize *Grable* -- advocating the side of the Circuit split that prevailed in earlier motions in MDL 1456, but lost at the Supreme Court. The rest of the motion is a series of attacks on the Abbott Defendants themselves. Such attacks, which have no proper place in a legal analysis, only highlight Plaintiffs' desperation. Plaintiffs' Motion should be denied.

## BACKGROUND

### 1.     The Instant Suit.

In 1997 (over 8 years ago), Plaintiff Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") made a presentation to Texas suggesting a lawsuit like this. Ven-A-Care ultimately filed this *qui tam* action under seal in Texas state court on March 14, 2000 (over five years ago); Ven-A-Care's petition alleged violations of the Texas Medicaid Fraud Prevention Act ("TMFPA"), a state statute, by numerous drug manufacturers. Although Texas intervened shortly after the suit

---

[2] Ironically, as set out more fully in defendants' Motion to Stay, Plaintiffs took the opposite view in a case very similar to this one. *See State of Texas*, ex rel. *Ven-A-Care of the Florida Keys, Inc v. Roxane Laboratories Inc.* et al, Case No. A-03-CA-663-SS. In *Roxane*, Plaintiffs specifically requested Judge Sparks stay proceedings after removal, and allow remand to be briefed before (and decided by) Judge Saris in MDL 1456.

was filed, Plaintiffs waited more than four years before they unsealed this case as against the Abbott Defendants,[3] B. Braun Medical Inc. and Baxter Healthcare Corp.

On October 3, 2005, a year after the case was unsealed as to the Abbott Defendants, Plaintiffs filed a Fifth Amended Petition. In this latest petition, Plaintiffs allege two types of claims. First, Plaintiffs allege (as they alleged in earlier petitions) that all defendants, including the Abbott Defendants, inflated the prices that they reported to Texas -- thereby causing Texas Medicaid to over-reimburse *pharmacies* that dispensed defendants' pharmaceuticals to Medicaid beneficiaries. (Pls. 5th Am. Pet. ¶¶ 5.2, 5.4-5.6) Second, Plaintiffs for the first time allege that the actions of the Abbott Defendants (and *only* the Abbott Defendants) caused Texas Medicaid to over-reimburse *physicians*.[4] (*Id.* ¶¶ 5.2, 5.7-5.8.) Specifically, Plaintiffs contend in this new claim that Texas Medicaid used the Medicare Average Wholesale Price ("AWP") -- a value calculated by the federal government, and ordered by the federal government to be used by the Medicare program pursuant to federal statute and regulations -- for reimbursement of physicians who administered the Abbott Defendants' drugs to Medicaid beneficiaries. (*Id.* ¶ 5.7.) Plaintiffs further contend that, due to the Abbott Defendants' conduct, the Medicare AWP for the drugs named in this new claim was higher than it should have been -- resulting in over-reimbursement of physicians. (*Id.*) Thus, this new claim, while purportedly based on state law, requires resolution of an embedded federal question: the meaning of AWP under the federal Medicare statute and regulations.

---

[3] Plaintiffs' First Amended Petition named only Abbott Laboratories Inc., Baxter and Braun. Plaintiffs added Abbott Laboratories and Hospira, Inc. in subsequent amended petitions.

[4] Texas Medicaid calculates pharmacy reimbursement in a different manner than physician reimbursement. (Pls. 5th Am. Pet. ¶¶ 5.4-5.8).

### 2.     MDL 1456 And Judge Saris' Pre-*Grable* Remand Orders.

Since 2002, the Judicial Panel on Multidistrict Litigation ("JPML") has transferred more than 70 Medicaid and Medicare pricing cases to the Honorable Patti B. Saris of the U.S. District Court for the District of Massachusetts for coordinated or consolidated pretrial proceedings in MDL 1456. These cases present common issues concerning the interpretation of AWP under the federal Medicare statute and regulations. Like this one, several of the cases transferred to MDL 1456 were brought by State Attorneys General, and alleged only state-law claims.

Among the actions transferred to MDL 1456 was a case much like this one, brought by the State of Minnesota. That case was originally filed in state court, but defendants removed on the ground that the state-law claims asserted required resolution of the embedded federal question of the meaning of AWP. Minnesota moved to remand, and Judge Saris addressed that motion (and remand motions filed by States in other suits) in *Montana v. Abbott Labs.*, 266 F. Supp. 2d 250 (D. Mass 2003). After a thorough analysis of the federal issue presented -- the very issue presented in the instant motion -- Judge Saris concluded that "the meaning of AWP under the Medicare statute" presented a federal question, because it is "an essential element" of plaintiffs' state law claims. *See Montana*, 266 F. Supp. 2d at 255.

Judge Saris ultimately concluded there was no federal jurisdiction over the claims, however, *because the source of the embedded federal question* (the Medicare and Medicaid statutes and regulations) *did not create a private right of action.* And Judge Saris was bound by First Circuit precedent, which read the Supreme Court's decision in *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) to require that, in order to create federal jurisdiction, a federal issue embedded in a state-law claim must arise from a statute conferring such a private right of action. *See Montana*, 266 F. Supp. 2d at 256. ("Under *Merrell Dow*, where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide

a private remedy for violation of that standard, for federal-question jurisdiction to obtain.") (citing, inter alia, *LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998); *Nashoba Comms. Ltd. P'ship No. 7 v. Town of Danvers*, 893 F.2d 435, 439 (1st Cir. 1990)). Accordingly, Judge Saris remanded the Minnesota lawsuit for a lack of a private right of action, and for that reason alone.

### 3. *Grable* And Subsequent State Court Removals

On June 13, 2005, the Supreme Court announced its decision in *Grable*. The Court had taken the case "to resolve a split within the Courts of Appeals on whether [*Merrell Dow*] always requires a federal cause of action as a condition for exercising federal-question jurisdiction." 125 S. Ct. at 2366. Disagreeing with the First Circuit, the Supreme Court answered that question squarely in the negative: "*Merrell Dow*," the Court held, "cannot be read . . . [to convert] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Id.* at 2370 (footnote omitted.). Instead, determining whether a federal-law issue embedded in a state-law claim gives rise to federal jurisdiction requires -- and has always required -- not *per se* rules, but a contextual inquiry. *See id.* ("*Merrell Dow* then, did not toss out, but specifically retained the contextual inquiry that had been [the law] for over 60 years."). *Grable* thus eliminated the sole ground for Judge Saris's remand decision in the Minnesota action.

Shortly after *Grable* was handed down, defendants in twelve Medicaid and Medicare pricing cases pending in state courts around the country removed their cases to federal court and filed "tag-along" notices with the JPML. In most of these cases, the defendants had not previously attempted removal because they knew that the cases would be transferred to Judge Saris -- and she would have been bound by her prior decision to remand the Minnesota case. These post-*Grable* removals are currently in various stages of removal and transfer to the MDL:

One has already been transferred to MDL 1456; seven have been conditionally transferred to MDL 1456 and await final orders from the JPML; and four have been remanded to state court.[5] Although Judge Saris has not yet had an opportunity to revisit, in light of *Grable*, the jurisdictional issues these cases raise, the Abbott Defendants expect that she will soon do so in ruling on remand motions presented by the States of Illinois, Kentucky, New York and Florida.

## ARGUMENT

On removing this action, the Abbott Defendants asserted their right to have a federal forum adjudicate this case. While the removal statute is to be strictly construed, "if the requirements of the removal statute are met, the right to remove is absolute." *Regis Assoc. v. Rank Hotels (Mgt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990); see also 16 CHARLES A. WRIGHT ET AL., MOORE'S FEDERAL PRACTICE AND PROCEDURE § 107.05 at 107-25 (3d ed. 2000). Accordingly, a federal court should "'be cautious about remand, lest it erroneously deprive a defendant of the right to a federal forum.'" *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 211 (D.N.J. 1992) (quoting 14A FEDERAL PRACTICE & PROCEDURE § 3721, at 218-19 (2d ed. 1985)). Plaintiffs have not remotely advanced sufficient grounds to deny the Abbott Defendants that right.

I.  **Federal-Question Jurisdiction Exists In This Case By Virtue Of Plaintiffs' Recently-Added Claim Against The Abbott Defendants.**

As set out above, *Grable* makes clear that -- before and after *Merrell Dow* -- whether a federal issue embedded in a state-law claim gives rise to federal jurisdiction does not depend

---

[5] *Florida v. Alpharma, Inc., et al.* (No. 05-257, N.D. Fla.), a case in which Plaintiff Ven-A-Care is also involved, has already been transferred to MDL 1456 and the parties are currently briefing plaintiff's remand motion before Judge Saris. Additionally, the following cases are awaiting final orders by the JPML for transfer to MDL 1456: *Illinois v. Alpharma, Inc., et al* (No. 05-4056, N.D. Ill.); *Kentucky v. Alpharma, Inc. et al* (No. 05-57, E.D.K.Y.); *Kentucky v. Abbott Laboratories Inc* (No. 05-48, E.D. Ky.); *Kentucky v Warrick Pharmaceuticals Corp, et al* (No. 05-49, E.D.K.Y.); *New York v. Pharmacia Crop.* (No. 05-872, N.D.N.Y.); *New York v Aventis Pharmaceuticals, Inc.* (No. 05-873, N.D.N.Y.); and *New York v. GlaxoSmithkline, PLC, et al.* (No. 05-874, N.D.N.Y.). Actions brought by the States of Wisconsin, Minnesota, Pennsylvania and Alabama have been remanded to state court.

solely on whether the federal issue stems from a federal statute creating a private right of action. *See* 125 S. Ct. at 2370 ("*Merrell Dow* cannot be read . . . [to convert] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one.") (footnote omitted.). Rather, the appropriate inquiry is a contextual one: Federal-question jurisdiction exists when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368. Each of the three elements of this inquiry is satisfied by Plaintiffs' newly-added TMFPA claim.

*First*, as Judge Saris has already held, a state law claim relating to alleged physician over-reimbursement, like Plaintiffs' new claim *necessarily* raises a federal issue. *See Montana*, 266 F. Supp. 2d at 255 (explaining that interpretation of "the term 'average wholesale price' in the Medicare statute . . . could have broad implications for Medicare reimbursements and co-payments"). Plaintiffs' new claim alleges that the Texas Medicaid program reimburses physicians for certain drugs at a rate of "89.5% of the 'Medicare AWP.'" (Fifth Am. Pet. ¶ 5.7.) Further invoking the regulatory scheme, the claim adds that Medicare AWP "is a value calculated by the Centers for Medicare and Medicaid Services." (*Id.*); *see also* 42 C.F.R. 405.517 (providing that Medicare AWP for multiple-source drugs is calculated as "the lesser of the median average wholesale price for all sources of the generic forms of the drug or biological or the lowest average wholesale price of the brand"). Thus, to determine whether Plaintiffs should prevail on their new claim, a court must determine whether Texas Medicaid overpaid providers for drugs when those payments were based on AWP -- as defined in the Medicare statute and regulations. The claim, even though cast as a state-law TMFPA claim, thus *necessarily* presents a federal question.

*Second*, the meaning of AWP in the Medicare statute and regulations is a disputed and substantial question in this case. Its resolution here will likely be outcome determinative with respect to Plaintiffs' new claim: If Plaintiffs' interpretation of AWP is incorrect, Plaintiffs claim for damages based on alleged over-reimbursement of physicians must fail. Moreover, resolution of the Medicare AWP is an important issue of federal law that sensibly belongs in federal court. The federal government has a strong interest in the uniform application of the Medicare statute and regulations at issue here. Where, as here, "the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (internal citations omitted). Moreover, Plaintiffs, in addition to seeking recovery of funds expended by the state treasury, are seeking to recover the federal portion of the alleged Medicaid overpayments. Thus, resolution of the meaning of AWP here could implicate millions of dollars of federal funds.

*Third*, provision of a federal forum to hear this case will not disturb any congressionally-approved balance of federal and state judicial responsibilities. Certainly, the *Grable* Court eschewed a "single, precise, all-embracing test" with respect to this last prong of analysis. *See* 125 S. Ct. at 2368. But the guideposts both *Grable* and *Merrell Dow* provide strongly indicate that this suit belongs in federal court.

In *Merrell Dow*, the Court declined to extend federal-question jurisdiction to a state negligence claim resting in part on the allegation that the defendant drug company had violated federal law -- and was thus presumptively negligent under Ohio law. *Grable*, 125 S. Ct. at 2369 (citing *Merrell Dow*, 478 U.S. at 806). Although the Court in *Merrell Dow* assumed that federal

law would have to be applied to resolve the claim, it held no federal jurisdiction existed because it seemed "improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law." *Id.* at 2371 (internal quotation marks and citations omitted); *see also id.* at 2370-71 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.").

In *Grable*, on the other hand, the Court upheld federal jurisdiction over a state quiet-title claim that turned on the contested interpretation of a federal tax statute. The Court distinguished *Merrell Dow*, remarking that, unlike negligence actions, which often turn on breaches of duties established by federal statute, "it is the rare state quiet title action that involves contested issues of federal law." *Id.* at 2371. Accordingly, because "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation," the court determined there was federal jurisdiction over the state-law claim. *Id.*

This case is much more akin to *Grable* than *Merrell Dow*. Plaintiffs' new claim is alleged under the TMFPA -- a statute applicable only to alleged fraud in the Texas Medicaid program. Thus, the kinds of conduct susceptible to suit under the statute, and the potential class of plaintiffs, are both far narrower than for a negligence claim like that in *Merrell Dow*. Moreover, whereas many negligence claims could be premised on violation of a federal standard, the embedded federal law violation alleged here exists *only because the State allegedly reimburses based on Medicare AWP*. Upholding jurisdiction here would thus hardly open the proverbial floodgates to allow myriad would-be state-law claimants into federal court. *See, e.g.,*

*In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (holding that "federal jurisdiction lies under *Grable*" and denying remand to state court in a product liability case brought by the State of Louisiana seeking reimbursement for payments made with its own funds and federal funds in its Medicaid program); *accord Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (denying motion to remand suit involving state breach of contract and consumer-protection law claims which turned on construction of a federal statute, even though the federal statute did not provide a private right of action: "We think it is likely to be the rare New York breach-of-contract action or [consumer-protection suit] that seeks to assert a private right of action for violation of a federal law otherwise lacking one."). Thus, federal jurisdiction exists over Plaintiffs' new claim, and Plaintiffs' Motion should be denied.

## II.   Plaintiffs Have Not Identified Sufficient Grounds To Deny The Abbott Defendants Their Statutory Right to a Federal Forum.

Tellingly, Plaintiffs' Motion to Remand fails even to address the foregoing three-prong analysis required by *Grable*. Instead, Plaintiffs' motion is devoted entirely to (1) malicious attacks on the Abbott Defendants themselves, and (2) an erroneous limiting of the scope of *Grable*'s holding. Neither remotely justifies denying the Abbott Defendants the federal forum that Plaintiffs chose to make available by including their new claim.

Plaintiffs' strident attacks on the Abbott Defendants are both unfounded and unrelated to the question presented. (*See, e.g.*, Pl. Remand Br. at 3, 9-11.) Plaintiffs fill their brief with caustic epithets directed toward Abbott Defendants, apparently hoping to goad this Court into wasting judicial resources and rushing into a precipitous remand decision itself, rather than letting Judge Saris decide remand in this case along with the many others already part of, or on their way to, MDL 1456. The desperation appears to stem from Plaintiffs' belief that, for whatever reason, Texas State Court is a more favorable forum for them than is federal court.

(*See* Pls.' Opp. to Defs.' Mtn. to Stay, at 4-5 (remarking that "[t]he State has never filed any cases under the [Texas Medicare Fraud Prevention Act ("TMFPA") in federal court"; instead, "the State has filed TMFPA lawsuits only in Travis County, Texas, resulting in, to date, in excess of $45 million in public settlements following extensive litigation").) But that is not a valid reason to deny federal jurisdiction.

Even on the merits, the aspersions Plaintiffs cast are baseless. Plaintiffs' allegations of "delay" by the Abbott Defendants are particularly disingenuous. (Pl. Remand Br. at 3). It is Plaintiffs, who waited three years to file suit, waited another four years to unseal their action, and then waited an additional year-and-a-half to add their new claim, who have delayed inordinately. The Abbott Defendants promptly removed this case after Plaintiffs amended their complaint and alleged the new claim that gives rise to federal question jurisdiction. The short delay that transfer to MDL 1456 would cause is as nothing compared to Plaintiffs' wait of *over five years* from the filing of this case to add their new claim.

Plaintiffs are also wrong to allege "bad faith" in removing this case, pointing to decisions of four U.S. District Courts to remand similar cases brought by the States of Wisconsin, Alabama, Pennsylvania, and Minnesota, and removed post-*Grable*. (*See* Pl. Remand Br. at 3, 9-11; *see also* Plaintiffs' "Supplemental Authority" Submission.) To be sure, these district courts remanded the cases before them rather than leaving that decision to Judge Saris. But Plaintiffs conveniently fail to mention that these cases differed from this one in a crucial respect -- and, thus, are easily distinguished. In those cases, defendants faced an additional hurdle for successful removal: because the plaintiffs had alleged Medicare-related claims in their original complaints, the 30-day removal time period had expired long before *Grable* issued and defendants subsequently removed those cases. Defendants thus argued that the *Grable* decision

itself constitutes an "other paper" as defined in the removal statute (*see* 28 U.S.C. § 1446(b)) in order to "restart" the removal time clock; four of the many district courts to which cases were removed post-*Grable* disagreed. Because Plaintiffs here only added their new claim recently, however, this procedural hurdle does not exist in this case.

To the extent these courts actually addressed the federal issue presented here, respectfully, they arrived at the wrong conclusion. *See, e.g., Minnesota v. Pharmacia Corp.*, 2005 WL 2739297 (D. Minn. Oct. 24, 2005); *Wisconsin v. Abbott Labs.*, 2005 WL 2407669 (W.D. Wis. Sept. 29, 2005); *Pennsylvania v. Tap Pharm. Prods., Inc.*, 2005 WL 2242913 (E.D. Pa. Sept. 9, 2005); *Alabama v. Abbott Labs.* (attached as Ex. 1):

- The Minnesota and Pennsylvania courts simply (and defendants believe incorrectly) disagreed with Judge Saris's holding that the interpretation of "Medicare AWP" presents a substantial federal question. (The Wisconsin court, however, sided with Judge Saris on this point.)

- The Wisconsin court (defendants believe incorrectly) held that the exercise of jurisdiction under the facts presented to them would disrupt the state/federal balance, because various actions involving this issue have been filed around the country. But that is not the inquiry *Grable* requires. *Grable* focused on whether letting a particular kind of case into federal court would open the floodgates to federal jurisdiction -- admitting garden-variety negligence claims based on violation of federal standards, for example, would do so. Here, the claim at issue is a narrow state-statutory Medicaid fraud claim -- which turns on an even narrower federal issue, the meaning under federal Medicare law of "AWP." The universe of possible cases under such a theory is limited indeed. In fact, most have already been filed -- and the majority are already before Judge Saris in MDL 1456.

- Finally, the Alabama court simply held without explanation that it did "not believe that the claims 'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" With respect, that conclusion is at odds with the analysis set forth above and in Judge Saris' opinion, as well as that of the Wisconsin court.

In any event, as set out above, many other cases removed post-*Grable* have been (and are being) transferred to MDL 1456 and Judge Saris. And, as set out above, there is every reason to believe that Judge Saris will conclude (in light of *Grable*) that this case -- and others like it --

- 12 -

support the exercise of federal jurisdiction. That some judges decided needlessly to expend resources and duplicate effort, and risk subjecting the defendants in that case to inconsistent decisions, does not require this Court to do the same; if Judge Saris rules against the Abbott Defendants, Plaintiffs will be back in Texas State Court soon enough.

Finally, Plaintiffs' characterization of *Grable* -- their only substantive discussion of the law of federal jurisdiction -- is plainly wrong. Plaintiffs posit that *Merrell Dow*, which they read as requiring that a federal issue embedded in a state-law claim must arise from a statute creating a private right of action in order to justify federal jurisdiction over the state law claim, is "the seminal case explaining federal question jurisdiction" -- and that that *Grable* "reflects a cautious willingness to make a one-time exception to the *Merrell Dow* doctrine." (Pl. Remand Br. at 5, 8.) That is self-evidently not so. As *Grable* itself makes clear, the contextual inquiry *Grable* requires has *always been the law* -- lower courts that interpreted *Merrell Dow* as do Plaintiffs simply misread that decision. 125 S. Ct. at 2369-70 ("*Merrell Dow* cannot be read whole as overturning decades of precedent . . . and converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one.") (footnote omitted). At bottom, Plaintiffs are arguing the side of the First Circuit in the Circuit split that led to *Grable* -- which controlled Judge Saris's prior Minnesota case decision, but lost in the Supreme Court *in a unanimous decision*. This federal district court is not the correct forum to seek reconsideration of *Grable*; Plaintiffs' contentions are not nearly enough to deprive the Abbott Defendants of their absolute right to a federal forum over Plaintiffs' new claim. *Regis Assoc.*, 894 F.2d at 195.

Thus, Plaintiffs' transparently wrong *Grable* analysis is woefully inadequate to justify remand.

## CONCLUSION

When Plaintiffs decided to add their new claim to this suit, they created federal jurisdiction over this suit. That is the clear import of Judge Saris' prior ruling, read in the light of the Supreme Court's unanimous *Grable* opinion. Plaintiffs attempt to skirt the issue with vitriol and invective, but ultimately offer no just reason to deny the Abbott Defendants the federal forum to which they are now entitled. Accordingly, while the Abbott Defendants continue to believe that Judge Saris ought to decide this issue, and that their Motion to Stay should be granted, if this Court is inclined to go forward the result should be no different. Plaintiffs' Motion to Remand should be denied.

Dated: November 7, 2005

Respectfully submitted,

Of Counsel:
Daniel E. Reidy
James R. Daly
Brian J. Murray
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

/s/ Jay L_____

D. Douglas Brothers
Texas State Bar No. 03084500
Gary L. Lewis
State Bar No. 012277490
GEORGE & BROTHERS, L.L.P.
1100 Norwood Tower
114 West 7th Street
Austin, Texas 78701
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*ATTORNEYS FOR DEFENDANTS ABBOTT LABORATORIES INC., ABBOTT LABORATORIES, AND HOSPIRA, INC.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served via U.S. Mail on this, the 7th day of November, 2005, on the following:

Raymond C. Winter
Assistant Attorney General
State of Texas
P. O. Box 12548
Austin, Texas  78711

Mr. Merle M. DeLancey
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street NW
Washington, DC  20037-1526

Mr. C. Jarrett Anderson
Anderson LLC
1300 Guadalupe, Suite 103
Austin, Texas  78701

Mr. John McDonald
Locke, Liddell & Sapp, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-8001

Mr. James J. Breen
The Breen Law Firm
P. O. Box 297470
Pembroke Pines, Florida  33029-7470

Mr. John E. Clark
Goode Casseb Jones Riklin Choate & Watson
2122 North Main Avenue
P. O. Box 120480
San Antonio, Texas  78212-9680

_[signature]_